**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  CROP INPUTS ANTITRUST LITIGATION | MDL No. 2993 |

**DEFENDANTS' RESPONSE TO CERTAIN PLAINTIFFS' (CORRECTED) MOTION**
**FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR**
**<u>COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.    BACKGROUND ........................................................................................................... 2

      a.    Locations of Plaintiffs ....................................................................................... 3

      b.    Locations of Defendants .................................................................................... 4

      c.    Procedural Posture of the Related Actions ........................................................ 4

      d.    Alternatives to Section 1407 Consolidation ...................................................... 5

II.   LEGAL STANDARD ................................................................................................... 7

III.  ARGUMENT ................................................................................................................ 7

      a.    Transfer and coordination of the Related Actions is appropriate ......................... 7

            i.     All Related Actions share common questions of law and fact ................... 7

            ii.    Transfer and consolidation will promote convenience and
                   efficiency for both the courts and the parties.............................................. 8

            iii.   The Panel should transfer and centralize pursuant to Section 1407
                   notwithstanding the pending Section 1404 motions .................................. 8

      b.    The Eastern District of Missouri is the most appropriate forum .......................... 11

            i.     The location of the parties, witnesses, and documents weigh in
                   favor of the Eastern District of Missouri .................................................... 12

            ii.    The Eastern District of Missouri has more judicial resources and
                   greater experience handling multidistrict litigation ................................... 14

            iii.   The number of cases pending in each district weighs in favor of the
                   Eastern District of Missouri ...................................................................... 16

      c.    In the alternative, the District of Minnesota also is an appropriate forum ........... 18

IV.   CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

<u>Cases</u>

*Atl. Marine Const. Co. v. U.S. Dist. Court. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ............................................................................................. 6, 12, 17

*Bailey v. OSF HealthCare Sys.*,
    No. 1:16-cv-01137-SLD-TSH, 2017 WL 1102739 (C.D. Ill. Mar. 23, 2017) ........................ 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
    177 F. Supp. 2d 1378 (J.P.M.L. 2001) .................................................................... 12

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    148 F. Supp. 3d 1383 (J.P.M.L. 2015) .................................................................... 18

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011) .................................................................... 16

*In re Cement & Concrete Antitrust Litig.*,
    437 F. Supp. 750 (J.P.M.L. 1977) ......................................................................... 11

*In re Dicamba Herbicides Litig.*,
    289 F. Supp. 3d 1345 (J.P.M.L. 2018) ................................................................ 14, 19

*In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sales Practices Litig.*,
    885 F. Supp. 2d 1383  (J.P.M.L. 2012) ................................................................ 13, 18

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
    368 F. Supp. 2d 1356 (J.P.M.L. 2005) .................................................................... 14

*In re Fisher-Price Rock 'n Play Sleeper Mktg., Sales Practices, & Prods. Liab. Litig.*,
    412 F. Supp. 3d 1357 (J.P.M.L. 2019) .................................................................... 10

*In re Fluoroquinolone Prods. Liab. Litig.*,
    122 F. Supp. 3d 1378 (J.P.M.L. 2015) ................................................................ 18, 19

*In re Google Antitrust Litig.*,
    -- F. Supp. 3d --, 2021 WL 409555 (J.P.M.L. Feb. 5, 2021) ........................................ 8

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
    396 F. Supp. 3d 1374 (J.P.M.L. 2019) .................................................................... 7

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
    65 F. Supp. 3d 1398 (J.P.M.L. 2014) ...................................................................... 13

*In re Inclusive Access Course Materials Antitrust Litig.*,
    482 F. Supp. 3d 1358 (J.P.M.L. 2020) ................................................................ 7, 8, 17

*In re Interest Rate Swaps Antitrust Litig.*,
    190 F. Supp. 3d 1364 (J.P.M.L. 2016) ................................................................. 13

*In re LLRice 601 Contamination Litig.*,
    466 F. Supp. 2d 1351 (J.P.M.L. 2006) ................................................................. 19

*In re Local TV Advertising Antitrust Litig.*,
    338 F. Supp. 3d 1341 (J.P.M.L. 2018) ................................................................... 8

*In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.*,
    24 F. Supp. 3d 1368 (J.P.M.L. 2014) ................................................................... 10

*In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*,
    26 F. Supp. 3d 1392 (J.P.M.L. 2014) ......................................................... 9, 10, 11

*In re Oxycontin Antitrust Litig.*,
    314 F. Supp. 2d 1388 (J.P.M.L. 2004) ............................................................. 9, 11

*In re Qualcomm Antitrust Litig.*,
    273 F. Supp. 3d 1373 (J.P.M.L. 2017) ................................................................. 17

*In re Schnuck Markets, Inc. Consumer Data Sec. Breach Litig.*,
    978 F. Supp. 2d 1379 (J.P.M.L. 2013) ....................................................... 9, 10, 11

*In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*,
    949 F. Supp. 2d 1378 (J.P.M.L. 2013) ................................................................. 18

*In re Sundstrand Data Control, Inc. Patent Litig.*,
    443 F. Supp. 1019 (J.P.M.L. 1978) ...................................................................... 11

*In re Swine Flu Immunization Prods. Liab. Litig.*,
    446 F. Supp. 244 (J.P.M.L. 1978) ........................................................................ 11

*In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*,
    893 F. Supp. 2d 1357 (J.P.M.L. 2012) ................................................................. 10

*In re Zetia (Ezetimbe) Antitrust Litig.*,
    325 F. Supp. 3d 1369 (J.P.M.L. 2018) ................................................................... 9

*Kadiyala v. Pupke*,
    No. 16 C 3549, 2017 WL 2350454 (N.D. Ill. May 30, 2017) ................................. 6

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir. 1987) ............................................................................... 17

Statutes

28 U.S.C. § 1404 ................................................................................................ passim

28 U.S.C. § 1407 ................................................................................................ passim

Other Authorities

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) .................................... 7

*U.S. District Courts – National Judicial Caseload Profile* (Sep. 30, 2020),
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf
    (last visited Mar. 18, 2021) ..................................................................... 14

*MDL Statistics Report – Distribution of Pending MDL Dockets by District* (Feb. 17, 2021),
    https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-
    17-2021.pdf
    (last visited Mar. 18, 2021) ..................................................................... 15

*Multidistrict Litigation Terminated Through September 30, 2020*,
    https://www.jpml.uscourts.gov/sites/jpml/files/Cumulative%20Terminated%202020_0.pdf
    (last visited Mar. 18, 2021) ..................................................................... 15

Defendants[1] agree with the Moving Plaintiffs[2] and Responding Plaintiffs[3] that the Related Actions[4] meet the criteria for centralization under 28 U.S.C. § 1407(a) and should be transferred and consolidated for pretrial proceedings.  Defendants and the majority of the plaintiffs disagree, however, with the Moving Plaintiffs' contention that the Southern District of Illinois is the most appropriate forum to transfer the actions.  *See* Resp. to Mot. for Transfer of Actions Pursuant to 28 U.S.C. § 1407 ("Pls.' Resp."), ECF No. 67, at 4.  None of the Defendants is headquartered in that district, and only one of the twenty-six named plaintiffs is alleged to reside there.  Rather, Defendants propose that the Eastern District of Missouri is the most appropriate district to transfer these actions for consolidated pretrial proceedings.

---

[1]     "Defendants" are Bayer CropScience LP; Bayer CropScience Inc.; Corteva Inc.; Cargill Incorporated; BASF Corporation; Syngenta Corporation; Winfield Solutions, LLC; Univar Solutions, Inc.; Federated Co-operatives Ltd.; CHS Inc.; Nutrien Ag Solutions Inc.; GROWMARK Inc.; GROWMARK FS, LLC; Simplot AB Retail Sub, Inc.; Tenkoz Inc.; and Pioneer Hi-Bred International, Inc.

[2]     The "Moving Plaintiffs" are Plaintiffs Barbara Piper, Charles Lex, John Swanson, Jones Planting Co. III, and Jason Canjar.

[3]     The "Responding Plaintiffs" are Plaintiffs Randi Handwerk, Dan Flaten, Ryan Bros., Inc., Michael J. Ryan, Leon Pfaff, B. Carlson, Eagle Lake Farms Partnership, Brad DeKrey, Tyler Schultz, Hapka Farms, Inc., Amy Hapka, Beeman Berry Farm, LLC, and Tom Burke Farms.

[4]     After the Moving Plaintiffs filed their motion, eight additional complaints with substantially similar allegations were filed, bringing the total number of actions to twenty-one, in five separate judicial districts.  *Eagle Lake Farms P'ship v. Bayer CropScience LP*, No. 0:21-cv-00543 (D. Minn.); *Tom Burke Farms v. Bayer CropScience LP*, No. 2:21-cv-01049 (E.D. Pa.); *DeKrey v. Bayer CropScience LP*, No. 0:21-cv-00639 (D. Minn.); *Schultz v. Bayer CropScience LP*, No. 0:21-cv-00681 (D. Minn.); *Hapka Farms, Inc. v. Bayer CropScience LP*, No. 0:21-cv-00685 (D. Minn.); *B & H Farming v. Syngenta Corp.*, No. 4:21-cv-00121 (D. Idaho); *Little Omega v. Bayer CropScience LP*, No. 3:21-cv-00297 (S.D. Ill.); *Beeman Berry Farm, LLC v. Bayer CropScience LP*, 0:21-cv-00719 (D. Minn.).  An updated list of the Related Actions is attached hereto as **Exhibit 1.**

The Bayer CropScience Defendants[5] have moved or intend to move under 28 U.S.C. § 1404(a) to transfer each of the Related Actions to the Eastern District of Missouri.  As explained in their motions, all or most of plaintiffs' claims are subject to an agreement providing that all claims and disputes arising out of, or connected in any way with, the agreement must be brought in the Eastern District of Missouri.  *See, e.g.*, Bayer CropScience Defs.' Mot. to Transfer Venue Under 28 U.S.C. § 1404(a), *Piper v. Bayer CropScience LP*, No. 3:21-cv-00021-NJR (S.D. Ill.), ECF No. 69, ¶¶ 2–3.  In addition to this forum-selection clause, and as established by the Moving Plaintiffs' own motion, the Eastern District of Missouri has a stronger nexus to this litigation than the Southern District of Illinois.

In the alternative, the Panel should transfer and consolidate the Related Actions in the District of Minnesota.  Three Defendants are headquartered there, giving the District of Minnesota a significantly stronger nexus to this litigation than the Southern District of Illinois, where no Defendants are headquartered.

## I.      BACKGROUND

Plaintiffs in the Related Actions allege that the Defendants—agricultural manufacturers, wholesalers, and retailers—conspired to boycott and prevent or limit the entry of certain electronic sales platforms that sought to lower the prices of Crop Inputs.  Plaintiffs seek to represent nationwide classes of direct and indirect purchasers who bought Crop Inputs at allegedly supracompetitive prices. *See* Br. iso Mot. for Transfer of Actions ("Moving Pls.' Br."), ECF No. 1, at 6.

---

[5]      The "Bayer CropScience Defendants" are Bayer CropScience LP and Bayer CropScience Inc.

### a. Locations of Plaintiffs

The named plaintiffs reside all over the country.  Of the two plaintiffs residing in Illinois, only one is alleged to reside in the Southern District of Illinois.  Moving Pls.' Br. 15 (Plaintiff Barbara Piper alleges that she resides in the Southern District of Illinois).

| Case Name / Case Number | Court | Residence of Named Plaintiffs[6] |
|---|---|---|
| *Piper*, No. 3:21-cv-00021 | S.D. Ill. | Illinois (CAC Compl. ¶ 16) |
| *Swanson*, No. 3:21-cv-00046 | S.D. Ill. | New York (CAC Compl. ¶ 17) |
| *Lex*, No. 3:21-cv-00122 | S.D. Ill. | Iowa (CAC Compl. ¶ 18) |
| *Handwerk*, No. 0:21-cv-00351 | D. Minn. | South Dakota (Compl. ¶ 22) |
| *Duncan*, No. 3:21-cv-00158 | S.D. Ill. | Illinois (Compl. ¶ 18) |
| *Flaten*, No. 0:21-cv-00404 | D. Minn. | North Dakota (Compl. ¶ 22) |
| *Jones Planting Co.*, No. 3:21-cv-00173 | S.D. Ill. | Mississippi (CAC Compl. ¶ 20) |
| *Canjar*, No. 3:21-cv-00181 | S.D. Ill. | Pennsylvania (CAC Compl. ¶ 21) |
| *Ryan Bros., Inc.*, No. 0:21-cv-00433 | D. Minn. | Iowa (Compl. ¶ 22) |
| *Budde*, No. 2:21-cv-02095 | D. Kan. | Kansas (Compl. ¶ 10) |
| *Pfaff*, No. 0:21-cv-00462 | D. Minn. | Wisconsin (Compl. ¶ 22) |
| *Vienna Eqho Farms*, No. 3:21-cv-00204 | S.D. Ill. | Wisconsin (Compl. ¶ 15) |
| *Carlson*, No. 0:21-cv-00475 | D. Minn. | Minnesota (Compl. ¶ 22) |
| *Eagle Lake Farms P'ship*, No. 0:21-cv-00543 | D. Minn. | Arkansas (Compl. ¶ 22) |
| *Tom Burke Farms*, No. 2:21-cv-01049 | E.D. Pa. | Pennsylvania (Compl. ¶ 22) |
| *DeKrey*, No. 0:21-cv-00639 | D. Minn. | Wyoming (Compl. ¶ 22) |
| *Schultz*, No. 0:21-cv-00681 | D. Minn. | Minnesota (Compl. ¶ 22) |

---

[6]     Each of the complaint citations is to the operative complaint in the relevant case's individual docket.  For the *Piper*, *Swanson*, *Lex*, *Jones Planting Co.*, and *Canjar* actions, that is the Class Action Consolidated Complaint ("CAC Compl.") filed on February 18, 2021. *Piper v. Bayer CropScience LP*, No. 3:21-cv-00021-NJR (S.D. Ill.), ECF No. 58.  Although no separate action was filed naming Schofield Farms, LLC as a plaintiff, the Class Action Consolidated Complaint alleges that it is a plaintiff residing in New York.  CAC Compl. ¶ 19.

| Case Name / Case Number | Court | Residence of Named Plaintiffs[6] |
|---|---|---|
| *Hapka Farms, Inc.*, No. 0:21-cv-00685 | D. Minn. | Minnesota (Compl. ¶¶ 20, 21) |
| *B & H Farming*, No. 4:21-cv-00121 | D. Idaho | Idaho (Compl. ¶¶ 10–13) |
| *Little Omega,* No. 3:21-cv-00297 | S.D. Ill. | Mississippi (Compl. ¶ 15) |
| *Beeman Berry Farm*, No. 0:21-cv-00719 | D. Minn. | Michigan (Compl. ¶ 20) |

### b. Locations of Defendants

Defendants are headquartered and incorporated in multiple states and judicial districts.  *See* Moving Pls.' Br. 14–15.  Both of the Bayer CropScience Defendants have their principal place of business in the Eastern District of Missouri.  *See* Bayer CropScience Defs.' Br. iso Mot. to Transfer Venue Under 28 U.S.C. § 1404(a) ("Section 1404 Br."), *Piper* ECF No. 70 (attached hereto as **Exhibit 2**) at Ex. A ¶¶ 3, 8.  Three defendants—Cargill, Incorporated ("Cargill"); Winfield Solutions, LLC ("Winfield Solutions"); and CHS Inc. ("CHS")—are headquartered in the District of Minnesota, and CHS is also incorporated in the District of Minnesota.  Decl. of Molly B. Thornton ¶ 3; Decl. of Christina Hanson ¶ 2; Decl. of Nanci Lilja ¶¶ 2–3 (declarations attached hereto as **Exhibit 3**).  Conversely, none of the Defendants is headquartered in the Southern District of Illinois.

### c. Procedural Posture of the Related Actions

As the Moving Plaintiffs acknowledge, each of the Related Actions is in its infancy, *see* ECF No. 2, ¶ 3, as plaintiffs are still in the process of serving Defendants.  No Defendant has responded to any of the complaints; no initial disclosures have been exchanged; and no case-management or status conference has been set.  In light of the Moving Plaintiffs' motion before this Panel, many of the plaintiffs have agreed with Defendants to extend deadlines or temporarily stay proceedings.  *E.g.*, Order Granting Extension of Deadlines, *Handwerk* ECF No. 61 (D. Minn.). The Moving Plaintiffs refused to agree to a stay, and therefore Defendants moved to stay their

actions pending this Panel's decision.  *E.g.*, Mot. to Stay Pending Decision by the JPML, *Piper* ECF No. 90.

Both the District of Minnesota and the Southern District of Illinois determined *sua sponte* that the Related Actions filed in those districts are similar and should be assigned to the same judges.  With the exception of one recently filed action that is awaiting re-assignment, all Minnesota actions are currently pending before Judge Michael J. Davis and Magistrate Judge Tony N. Leung,[7] and all Illinois actions are currently pending before Chief Judge Nancy J. Rosenstengel.[8]

### d.  Alternatives to Section 1407 Consolidation

The Panel's February 25, 2021, order directed parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)."  ECF No. 4.

The Bayer CropScience Defendants have moved to transfer Related Actions in each of the District of Minnesota, the Southern District of Illinois, the District of Kansas, and the Eastern District of Pennsylvania to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a).  *E.g.*, Bayer CropScience Defs.' Mot. to Transfer Venue Under 28 U.S.C. § 1404(a), *Piper* ECF No. 69.

---

[7]  *See, e.g.*, *Handwerk v. Bayer CropScience LP*, No. 0:21-cv-00351-MJD-TNL (D. Minn.), ECF No. 2 (assigning *Handwerk* to Judge Davis and Magistrate Judge Leung); *Flaten v. Bayer CropScience LP*, No. 0:21-cv-00404-MJD-TNL (D. Minn.), ECF No. 7 (finding that the *Flaten* case is related to the earlier-filed *Handwerk* case and reassigning *Flaten* to the same judges as *Handwerk*).  The first-filed case in Minnesota had been assigned to Judge Schiltz, but that plaintiff voluntarily dismissed its complaint and re-filed in the Southern District of Illinois.

[8]  *See, e.g.*, *Piper v. Bayer CropScience LP*, No. 3:21-cv-00021-NJR (S.D. Ill.), ECF No. 34 (assigning *Piper* to Chief Judge Rosenstengel); *Swanson v. Bayer CropScience LP*, No. 3:21-cv-00046-NJR (S.D. Ill.), ECF No. 17 (finding that the *Swanson* case is similar to the earlier-filed *Piper* case and reassigning *Swanson* to Chief Judge Rosenstengel).

As new actions are filed, the Bayer CropScience Defendants intend to file motions to transfer on identical grounds. The Bayer CropScience Defendants' brief in support of their motion explains that each named plaintiff's antitrust claims are governed by a Technology/Stewardship Agreement ("TSA") that granted each of them a limited license to use seed containing Bayer CropScience patented seed technology. Section 1404 Br. at 1. None of the plaintiffs could have purchased seed containing such technology, regardless of brand, manufacturer, distributor, or retailer, without entering into a TSA. *Id.* The TSA requires that "all claims and disputes arising out of and/or connected in any way with this Agreement and the use of the seed or the [Bayer CropScience] technologies" be brought in the Eastern District of Missouri. *Id.* That forum-selection clause must be given "controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court. for W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013).

The Bayer CropScience Defendants also explain that the courts should transfer the entirety of the Related Actions to the Eastern District of Missouri (rather than just the claims against the Bayer CropScience Defendants) in the interest of judicial efficiency, as other courts have done in analogous circumstances. Section 1404 Br. at 15–20 (citing, *e.g.*, *Kadiyala v. Pupke*, No. 16 C 3549, 2017 WL 2350454, at *7 (N.D. Ill. May 30, 2017) ("[I]n light of the forum selection clauses . . . and the desire to efficiently resolve this dispute, . . . it is appropriate to transfer the entire case.")).

Defendants submit that given the complexity and numerosity of these actions, consolidation and transfer will better promote efficient pretrial administration than alternatives to consolidation (such as informal coordination of discovery and scheduling).

## II.    LEGAL STANDARD

The Panel may transfer civil actions "for coordinated or consolidated pretrial proceedings" in a particular district when they "involv[e] one or more common questions of fact" and where such transfers "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).

In determining which judicial district is the most appropriate venue for consolidation and transfer, the panel considers "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004).

## III.    ARGUMENT

### a.    Transfer and coordination of the Related Actions is appropriate.

#### i.    All Related Actions share common questions of law and fact.

This Panel routinely transfers and consolidates antitrust cases based on the same alleged restraint of trade.  *See* Moving Pls.' Br. 6 (gathering cases); *accord, e.g.*, *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (gathering cases and explaining that the Panel "frequently" transfers and consolidates antitrust cases "where, as here, all actions arise from a common factual core" even when the cases "involv[e] differently-situated plaintiffs and differently-defined putative classes"); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 396 F. Supp. 3d 1374, 1375 (J.P.M.L. 2019).

Here, each of the Related Actions involves the same common questions of both law and fact identified in the Moving Plaintiffs' memorandum in support of their motion.  Moving Pls.' Br. 6–7.  Both the District of Minnesota and Southern District of Illinois have found that Related Actions pending in those districts are similar or related to one another.  *E.g.*, *Flaten v. Bayer*

*CropScience LP*, No. 0:21-cv-00404-MJD-TNL (D. Minn.), ECF No. 7; *Swanson v. Bayer*

*CropScience LP*, No. 3:21-cv-00046-NJR (S.D. Ill.), ECF No. 17.

### ii.  Transfer and consolidation will promote convenience and efficiency for both the courts and the parties.

The Panel has repeatedly held that transfer and consolidation of antitrust cases promotes

convenience and judicial efficiency, particularly where the plaintiffs assert claims on behalf of a

putative class.  *E.g.*, Moving Pls.' Br. 7–8; Pls.' Resp. 5; *see also, e.g.*, *Inclusive Access*, 482

F. Supp. 3d at 1359 ("Centralization will eliminate duplicative discovery, the possibility of

inconsistent rulings on class certification and other pretrial matters, and conserve judicial and party

resources."); *In re Google Antitrust Litig.*, -- F. Supp. 3d --, 2021 WL 409555, at *2 (J.P.M.L.

Feb. 5, 2021) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial

rulings, including with respect to class certification and *Daubert* motions; and conserve the

resources of the parties, their counsel, and the judiciary."); *In re Local TV Advertising Antitrust*

*Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) (same).

Here, transfer and consolidation afford the same benefits that this Panel has repeatedly

identified.  As the Moving Plaintiffs note, each of the Related Actions "will likely involve many

of the same pretrial issues, and the parties will seek much of the same discovery."  Moving Pls.'

Br. 7; *see also* Pls.' Resp. 7 (similar).  Transfer and consolidation would streamline resolution of

dispositive motions; discovery issues such as the nature and scope of discovery; and mitigate the

risk of inconsistent class-certification and *Daubert* rulings.

### iii.  The Panel should transfer and centralize pursuant to Section 1407 notwithstanding the pending Section 1404 motions.

The Panel should transfer and consolidate the Related Actions in the Eastern District of

Missouri pursuant to 28 U.S.C. § 1407 rather than wait for decisions on the pending 28 U.S.C.

§ 1404(a) motions from the multiple courts currently assigned to the Related Actions.  When

determining whether to transfer cases pursuant to Section 1407 while Section 1404 motions are pending, this panel considers (1) whether "final rulings on the Section 1404 motions have . . . issued"; (2) the number of "actions pending in . . . districts outside of the suggested transferee district"; (3) whether the Section 1404 motions are opposed; and (4) whether "additional tag-along actions also may be filed in this litigation." *In re Schnuck Markets, Inc. Consumer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (transferring actions to the Eastern District of Missouri under Section 1407 notwithstanding pending Section 1404 motions). Each of those considerations weighs in favor of transfer and consolidation under Section 1407.

First, no court has ruled on the pending Section 1404 motions in the Related Actions. The Panel has repeatedly held that where no Section 1404 motion has been granted, transfer and consolidation under Section 1407 is appropriate, as "the outcome of that motion practice is uncertain, as is the timing of the various courts' rulings." *In re Zetia (Ezetimbe) Antitrust Litig.*, 325 F. Supp. 3d 1369, 1371 (J.P.M.L. 2018); *see also In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (transferring under Section 1407 where "[r]ulings on the pending Section 1404 motions have not been issued and do not appear imminent"). Immediate transfer and consolidation under Section 1407 has the benefit of "placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004).

Second, the many jurisdictions with pending Section 1404 motions weighs in favor of transfer and consolidation under Section 1407. In *Schnuck*, there were "actions pending in three districts outside of the suggested transferee district." *Schnuck*, 978 F. Supp. 2d at 1381; *see also*

*Natrol*, 26 F. Supp. 3d at 1392–93 (actions pending in three districts outside the proposed transferee district weighs in favor of transfer under Section 1407 rather than waiting on separate courts' decisions on Section 1404); *In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.*, 24 F. Supp. 3d 1368, 1368 (J.P.M.L. 2014) (same).  Here, the greater number of jurisdictions with Related Actions pending weighs even more heavily in favor of Section 1407 transfer and consolidation.

Third, at least some of the plaintiffs have indicated that they will oppose the Section 1404 motions.  *E.g.*, Agreed Mot. for an Extension of Time to Respond to Bayer CropScience Defs.' Mot. to Transfer Venue Under 28 U.S.C. § 1404(a), *Piper v. Bayer CropScience LP*, No. 3:21-cv-00021-NJR (S.D. Ill.), ECF No. 94 at 2–3; Joint Mot. to Extend Response Deadlines, *Handwerk v. Bayer CropScience LP*, No. 0:21-cv-00351-MJD-TNL (D. Minn.), ECF No. 57, ¶ 7.  The Panel has held that where Section 1404 motions are opposed, transfer and consolidation under Section 1407 is particularly appropriate.  *E.g.*, *In re Fisher-Price Rock 'n Play Sleeper Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357, 1359–60 (J.P.M.L. 2019); *Michaels*, 24 F. Supp. 3d at 1368–69; *cf. e.g.*, *In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*, 893 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (denying Section 1407 motion when defendants "recently filed an unopposed [Section 1404] motion"); *Schnuck*, 978 F. Supp. 2d at 1381 ("Other recent decisions in which we denied centralization in favor of Section 1404 motions have involved . . . indications from counsel that they were amenable to Section 1404 transfer.").

Fourth, new related actions continue to be filed in various jurisdictions.  After the Moving Plaintiffs filed their motion for Section 1407 transfer, five new complaints were filed in the District of Minnesota (each by different lead counsel), one new complaint was filed in the Southern District of Illinois, another in the Eastern District of Pennsylvania, and yet another in the District of Idaho.

*Supra* footnote 1.  If the Panel were to deny a Section 1407 motion because of pending Section 1404(a) motions, the parties would have to engage in additional Section 1404(a) motion practice for each newly filed related action.  Moreover, if even one district denies the Section 1404(a) motion, the cases may have to be litigated in multiple districts.  As a result, the Panel has held that "[g]iven that the number of related actions continues to grow, along with the potential need for additional motions to transfer venue, we find that transfer under Section 1407 is warranted."  *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004); *accord, e.g.*, *Schnuck*, 978 F. Supp. 2d at 1381 (potential for "additional tag-along actions" weighs in favor of Section 1407 transfer and consolidation); *Natrol*, 26 F. Supp. 3d at 1393 (similar).

### b.  The Eastern District of Missouri is the most appropriate forum.

The Eastern District of Missouri is the most appropriate forum to centralize the Related Actions.  Although no actions currently are pending in that district, the Panel has instructed that it may, "[i]n appropriate circumstances[,] . . . order transfer of a group of actions to a district in which none of the constituent actions is pending."  *In re Cement & Concrete Antitrust Litig.*, 437 F. Supp. 750, 753 (J.P.M.L. 1977); *see, e.g.*, *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) (finding "such circumstances" present where the transferee district is the location of a party's headquarters and pretrial proceedings were not "significantly further advanced in any one particular district"); *see also In re Swine Flu Immunization Prods. Liab. Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978) (transferring to the District of the District of Columbia "even though none of the actions yet filed in this litigation is pending there").  Transfer to the Eastern District of Missouri is appropriate here.

Not only does the Eastern District of Missouri have all of the claimed geographic advantages of the Southern District of Illinois (*i.e.*, centrality and accessibility, *see* Moving Pls.'

11

Br. 14–15 (citing airport in St. Louis, Missouri, proximity of Defendants to St. Louis, Missouri, and facilities and thousands of employees in St. Louis County, Missouri)), but it also is the forum that was contractually selected by the named plaintiffs and the Bayer CropScience Defendants to litigate this dispute.  The Moving Plaintiffs have not—and cannot—identify any extraordinary circumstances that would justify disregarding the parties' agreed upon forum.  *See Atl. Marine*, 571 U.S. at 52 (explaining that a Section 1404 motion enforcing forum-selection clause "should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer" with the plaintiff bearing the burden).  Conversely, none of the relevant considerations support centralization in the Southern District of Illinois, and no party who filed outside that district supports transfer to that district.  *See* Pls.' Resp. at 3.

>    **i.  The location of the parties, witnesses, and documents weigh in favor of the Eastern District of Missouri.**

A significant consideration for the Panel in determining the appropriate transferee forum is the location of the parties, witnesses, and documents. *See In re Auto. Refinishing Paint Antitrust Litig.*, 177 F. Supp. 2d 1378, 1379 (J.P.M.L. 2001) (choosing transferee forum, in part, because "pertinent documents and witnesses can be expected to be found in [its] vicinity").  Here, not a single Defendant resides in the Southern District of Illinois.  Of the twenty-six named plaintiffs in the various Related Actions, just one is alleged to live in the Southern District of Illinois, but that plaintiff did not herself make any relevant purchases and instead asserts claims as executrix of her late husband's estate.  In other words, there is very little, if any, evidence in the Southern District of Illinois that relates to this litigation.[9]

---

[9]     The Moving Plaintiffs argue that "authorized retailer" contracts "were likely executed in Illinois or by companies headquartered in Illinois."  Moving Pls.' Br. 11.  It is not, however, the execution of those contracts that is at issue in this case, but rather the terms that Defendants allegedly inserted into those contracts.  Any evidence related to Defendants' decisions to include those terms is located at their headquarters, not at the site where the individual plaintiffs signed

By contrast, several Defendants have significant connections to the Eastern District of Missouri.  Both of the Bayer CropScience Defendants are headquartered in the district in St. Louis County, Missouri.  *See* Section 1404 Br. at Ex. A ¶¶ 3, 8.  Defendant BASF Corp. has four manufacturing plants, two production facilities, and a warehouse within the district in St. Louis and Hannibal, Missouri, and employs 389 agricultural products personnel in the state.  Ex. 3, Decl. of Kimberly Livecchia-Jeff, ¶ 3.  Defendant CHS has two vice presidents who reside within the Eastern District of Missouri, along with several other employees, such as hedging employees, energy-transportation drivers, IT personnel, and sales employees who reside in Missouri.  Ex. 3, Decl. of Nanci Lilja, ¶ 7.  Defendant Winfield Solutions also has a key manufacturing facility for its crop inputs business and an Agronomy Service Center where it stores and distributes crop inputs products located within the adjacent Western District of Missouri.  Ex. 3, Decl. of Christina Hanson, ¶¶ 4–7.

The Panel has regularly transferred cases to the district in which one of the defendants is headquartered because it is the site of relevant documents and witnesses.  *See In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sales Practices Litig.*, 885 F. Supp. 2d 1383, 1384  (J.P.M.L. 2012) (selecting Eastern District of Missouri as transferee district because defendant's "headquarters are located in [the] district" and thus "primary witnesses, physical evidence, and documentary evidence likely will be located there"); *see also, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (transferring actions to district with strong factual connection to the litigation on the basis of the defendants' presence); *In re Home Depot, Inc.*

---

the contracts.  And no Defendant is headquartered in the Southern District of Illinois.  (Defendant Univar Solutions is headquartered in Downers Grove, Illinois, within the Northern District of Illinois, and Defendant GROWMARK Inc. is headquartered in Bloomington, Illinois, within the Central District of Illinois.)

*Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) ("Home Depot is headquartered in the Northern District of Georgia. Thus, relevant documents and witnesses are likely located within the district.").   The Panel previously has held that the Eastern District of Missouri is the appropriate transferee district where a defendant's headquarters is located in or near St. Louis, Missouri, despite the plaintiffs' motion to centralize the actions across the river in the Southern District of Illinois. *See, e.g.*, *In re Dicamba Herbicides Litig.*, 289 F. Supp. 3d 1345, 1346–47 (J.P.M.L. 2018) (rejecting moving plaintiffs' request to centralize in the Southern District of Illinois and instead transferring to the Eastern District of Missouri where the defendant is headquartered); *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 368 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (same).

> ii. **The Eastern District of Missouri has more judicial resources and greater experience handling multidistrict litigation.**

The Moving Plaintiffs argue that the Southern District of Illinois is an appropriate transferee district based on the district's experience with multidistrict litigation and current case-management statistics.  By these standards, the Eastern District of Missouri is a superior choice. The Eastern District of Missouri ranks 4th out of 94 U.S. District Courts for shortest median time from filing to disposition in civil cases (5.5 months).[10]  The Southern District of Illinois ranks 86th out of the 94 U.S. District Courts, with a median time over twice as long (13.3 months).[11] Similarly, in the Eastern District of Missouri the percentage of cases over three years old is 4.1%.[12]

---

[10]   *U.S. District Courts – National Judicial Caseload Profile*, at 59 (Sep. 30, 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf   (last visited Mar. 18, 2021).

[11]   *Id.* at 49.

[12]   *Id.* at 59.

In the Southern District of Illinois, the percentage of cases over three years old is 11%, nearly three times greater.[13]

The judges in the Eastern District of Missouri have significant experience handling multidistrict litigation.  Currently, there are three MDLs pending in the district.[14]  As of September 30, 2020, the district had terminated nineteen other MDLs, eleven of which were terminated by judges still sitting on the bench today.[15]  At least one of the recently terminated MDLs involved allegations of unlawful collusion,[16] and another involved claims against agricultural manufacturers.[17]  Seven of the thirteen judges in the Eastern District of Missouri have handled at least one MDL, four of whom do not currently have an MDL pending before them.[18]

---

[13]    *Id.* at 49.

[14]    *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, at 3 (Feb. 17, 2021) [hereinafter "Pending MDL Dockets by District"], https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-17-2021.pdf (last visited Mar. 18, 2021). The three MDLs are *In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2382-HEA (E.D. Mo.) (Autrey, J.); *In re NuvaRing Prods. Liab. Litig.*, No. 4:08-md-01964-RWS (E.D. Mo.) (Sippel, C.J.); and *In re Dicamba Herbicides Litig.*, No. 1:18-md-2820-SNLJ (E.D. Mo.) (Limbaugh, J.).

[15]    *Multidistrict Litigation Terminated Through September 30, 2020* [hereinafter "MDLs Terminated"], at 38–39, https://www.jpml.uscourts.gov/sites/jpml/files/Cumulative%20Terminated%202020_0.pdf (last visited Mar. 18, 2021).

[16]    *See In re Express Scripts, Inc., PBM Litig.*, No. 4:05-MD-01672-SNL (E.D. Mo.) (Autrey, J.) (terminated in 2016).

[17]    *See In re Genetically Modified Rice Litig.*, No. 4:06-MD-1811 CDP (E.D. Mo.) (Perry, J.) (terminated in 2015).

[18]    The four judges with MDL experience without an MDL currently pending before them are Judge Perry, Judge Ross, Judge Hamilton, and Judge Webber.

By contrast, the Southern District of Illinois has no MDLs currently pending.[19] Historically, that district has handled only five MDLs, none of which involved antitrust allegations or crop farming, and none of which was handled by a judge currently on the bench.[20]

### iii.  The number of cases pending in each district weighs in favor of the Eastern District of Missouri.

The Panel typically considers the number of cases currently pending in each potential transferee district when evaluating the appropriate venue for centralization.  While at the time the Moving Plaintiffs filed their motion, a narrow majority of actions (seven out of thirteen) were pending in the Southern District of Illinois, as of the date of this filing, there is no single district in which a majority of actions pending.[21]

Although there are no cases currently pending in the Eastern District of Missouri, Defendants expect many if not all of the Related Actions would be transferred to that district pursuant to the Bayer CropScience Defendants' Section 1404 motion.  *See In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (recognizing that district court's transfer pursuant to Section 1404 motion would "aid the Panel in its decision on . . . the court to which that MDL ought to be assigned").  Moreover, transferring to one forum now for pre-trial purposes when every one of the Related Cases is subject to transfer later to a different forum for trial purposes would undermine the animating purpose of judicial efficiency underlying both Section 1404 and Section 1407.  As the Panel has recognized, a pre-

---

[19]     Pending MDL Dockets by District, *supra*, at 2.

[20]     MDLs Terminated*, supra*, at 35.

[21]     As of the date of this filing, there are ten actions pending in the District of Minnesota, eight actions pending in the Southern District of Illinois, and one action pending in each of the District of Idaho, the District of Kansas, and the Eastern District of Pennsylvania.

trial forum pursuant to 1407 and a different trial forum pursuant to 1404 can produce "inefficiency . . . in the transition." *See In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) (denying transfer under Section 1407 of one related case because applying the forum selection clause would result in pretrial proceedings in one court and trial in another court). Therefore, this factor weighs in favor of transferring the cases to the Eastern District of Missouri.[22]

The Panel should not give weight to the location of the first-filed action, as that action was improperly filed in violation of a binding forum-selection clause. Moreover, the location of the first-filed action is less important where, as here, all twenty-one of the Related Actions were filed within about two months of each other and no action has made any meaningful progress past the filing of the complaint. *See, e.g.*, *Inclusive Access*, 482 F. Supp. 3d at 1360 (transferring all related actions to the Southern District of New York although first-filed retailer action was filed in Delaware and first-filed student-purchaser action was filed in New Jersey). *See also Bailey v. OSF HealthCare Sys.*, No. 1:16-cv-01137-SLD-TSH, 2017 WL 1102739, at *5 (C.D. Ill. Mar. 23, 2017) (finding that first-to-file rule did not weigh in favor of Section 1404 transfer where first plaintiffs filed their case "less than a week" before others and "do not identify any reason other than the bare fact of their marginally earlier filing to explain why the timing augurs in favor of transfer" because to do so "would . . . encourage 'unseemly race[s] to the courthouse'") (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987)).

---

[22]   Further, although the Responding Plaintiffs correctly contend that the Panel is not bound by a forum-selection clause, *see* Pls.' Resp. at 12, transferring to the Eastern District of Missouri is consistent with the U.S. Supreme Court's directive in *Atlantic Marine* to give full force to such clauses absent extraordinary circumstances. 571 U.S. at 52. Here, the plaintiffs are subject to the same forum-selection clause establishing the Eastern District of Missouri as the mandatory forum. Thus, had the plaintiffs simply filed where they were contractually required to, all of these cases would already be pending in that district.

### c.   In the alternative, the District of Minnesota also is an appropriate forum.

Alternatively, another appropriate forum to which to transfer these actions is the District of Minnesota, where ten of the twenty-one Related Actions currently are pending.  The District of Minnesota has a greater factual nexus to the allegations in these complaints than the Southern District of Illinois.  Unlike the Southern District of Illinois, where no Defendants are located, three of the Defendants are headquartered in the District of Minnesota: Cargill, Winfield Solutions, and CHS.  Ex. 3, Decl. of Molly B. Thornton ¶ 2; Decl. of Christina Hanson ¶ 2; Decl. of Nanci Lilja ¶ 3.  CHS also is incorporated in Minnesota and more than 26,000 of its farmer and local cooperative member-owners reside there.  Ex. 3, Decl. of Nanci Lilja ¶¶ 2–3.  Defendant BASF Corp. has a warehouse and an office in the District of Minnesota.  Ex. 3, Decl. of Kimberly Livecchia-Jeff, ¶ 4. Given the location of the Defendants within the district, "primary witnesses, physical evidence, and documentary evidence likely will be located there."  *Emerson Elec.*, 885 F. Supp. 2d at 1384.

This Panel has often cited the extensive experience of the judges in the District of Minnesota in transferring cases to that district.  *See, e.g.*, *In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1381 (J.P.M.L. 2015) (transferring to the District of Minnesota based, in part, on the MDL experience of now-Chief Judge Tunheim); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (J.P.M.L. 2015) (same for Judge Ericksen); *In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L. 2013) (same for Judge Frank).  Eight of the thirteen judges on the bench in the District of Minnesota have handled at least one MDL, including two of the six active-status judges.  The district has successfully terminated forty MDLs as of September 30, 2020.[23]  An additional

---

[23]      *MDLs Terminated, supra*, at 37–38.

six MDLs are currently pending.[24]  Judge Davis, before whom the Related Actions in the District of Minnesota have been consolidated, is particularly experienced with MDLs.  He is currently overseeing two MDLs[25] and has terminated two others.  Moreover, according to PACER, the District of Minnesota has significantly greater experience handling antitrust matters over the last decade (25 actions) compared to the Southern District of Illinois (2 actions).

The District of Minnesota courthouse in Minneapolis, Minnesota, is easily accessible to all parties and counsel in this nationwide litigation.  *See, e.g.*, *Fluoroquinolone*, 122 F. Supp. 3d at 1381 (finding that the District of Minnesota "provides a geographically central and convenient forum for this nationwide litigation"). In addition to the three Defendants headquartered near Minneapolis, three law firms representing the Defendants and seven law firms representing the plaintiffs are located in the District of Minnesota.

Finally, Responding Plaintiffs assert that "every plaintiff, except those that filed in Illinois, supports transfer to the District of Minnesota."  Pls.' Resp. at 3.  The Panel has previously prioritized selecting a transferee district that is supported by all defendants and at least some of the plaintiffs.  *See, e.g.*, *Dicamba Herbicides*, 289 F. Supp. 3d at 1347 (transferring actions to the Eastern District of Missouri because that district "is supported by numerous plaintiffs, as well as all defendants (albeit in the alternative [to opposing centralization])"); *In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006) (transferring actions to the Eastern District of Missouri because that "district enjoys the support of the common defendant and several plaintiffs").

---

[24]     Pending MDL Dockets by District, *supra* at 3.

[25]     *In re Baycol Prods. Liab. Litig.*, MDL No. 1431 (D. Minn.) (Davis, J.); *In re CenturyLink Sales Practices & Securities Litig.*, MDL No. 17-2795 (MJD/KMM) (D. Minn.) (Davis, J.).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel transfer the Related Actions to the Eastern District of Missouri for consolidated pretrial proceedings.  In the alternative, Defendants respectfully request that the Panel transfer the Related Actions to the District of Minnesota for consolidated pretrial proceedings.


Dated: March 18, 2021                          Respectfully submitted,

/s/ *Nathan P. Eimer*

Nathan P. Eimer
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: 312-660-7600
Fax: 312-692-1718
neimer@eimerstahl.com

*Counsel for Defendant Winfield Solutions, LLC*

/s/ *Laura S. Shores* (with permission)

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6855
Fax: 202-942-5999
laura.shores@arnoldporter.com

*Counsel for Defendants Bayer CropScience LP and Bayer CropScience, Inc.*

/s/ *Jason A. Leckerman* (with permission)

Jason A. Leckerman
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
LeckermanJ@ballardspahr.com

*Counsel for Defendants Corteva Inc. and Pioneer Hi-Bred International, Inc.*

20

/s/ *Eric Mahr* (with permission)

Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
Tel: 215-864-8266
Fax: 215-864-8999
eric.mahr@freshfields.com

*Counsel for Defendant Cargill, Incorporated*

/s/ *David J. Lender* (with permission)

David J. Lender
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: 212-310-8153
Fax: 212-310-8007
David.Lender@weil.com

*Counsel for Defendant BASF Corporation*

/s/ *Paul S. Mishkin* (with permission)

Paul S. Mishkin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel: 212-450-4000
Fax: 212-701-5292
paul.mishkin@davispolk.com

*Counsel for Defendant Syngenta Corporation*

/s/ *Craig C. Martin* (with permission)

Craig C. Martin
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Street
Chicago, IL 60654
Tel: 312-728-9000
Fax: 312-728-9199
cmartin@willkie.com

*Counsel for Defendant Univar Solutions, Inc.*

/s/ *Michael L. McCluggage* (with permission)

Michael L. McCluggage
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: 312-660-7665
Fax: 312-692-1718
mmccluggage@eimerstahl.com

*Counsel for Defendant*
*Federated Co-operatives, Ltd.*

/s/ *Kathy L. Osborn* (with permission)

Kathy L. Osborn
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel: 317-237-0300
Fax: 317-237-1000
kathy.osborn@faegredrinker.com

*Counsel for Defendant CHS Inc.*

/s/ *G. Patrick Watson* (with permission)

G. Patrick Watson
BRYAN CAVE LEIGHTON PAISNER LLP
1201 West Peachtree Street, Suite 1400
Atlanta, Georgia 30309
Tel: 404-572-6846
Fax: 404-420-0846
patrick.watson@bclplaw.com

*Counsel for Defendant*
*Nutrien Ag Solutions Inc.*

/s/ *F. Matthew Ralph* (with permission)

F. Matthew Ralph
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: 612-340-2600
Fax: 952-516-5574
ralph.matthew@dorsey.com

*Counsel for Defendants GROWMARK, Inc. and*
*GROWMARK FS, LLC*

22

/s/ *Shylah R. Alfonso* (with permission)

Shylah R. Alfonso
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: 206-359-3980
Fax: 206-359-4980
SAlfonso@perkinscoie.com

*Counsel for Defendant Simplot AB Retail Sub*

/s/ *Lee A. Peifer* (with permission)

Lee A. Peifer
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
Tel: 404-853-8000
Fax: 404-853-8806
leepeifer@eversheds-sutherland.com

*Counsel for Defendant Tenkoz, Inc.*

23